IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Thomas Maxwell　　　　　　　　　　　　　　:
and Duane Gibson,
　　　　　　　　　　　　　　　　　　　　　　:　　Civil Action 2:12-cv-0557
　　　　　　　　Plaintiffs
　　　　　　　　　　　　　　　　　　　　　　:　　Judge Sargus
　v.
　　　　　　　　　　　　　　　　　　　　　　:　　Magistrate Judge Abel
John Desmarais, *et al.*,
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Defendants

**INITIAL SCREENING
REPORT AND RECOMMENDATION**

　　　　Plaintiff s Thomas Maxwell and Duane Gibson, inmates at Richland Correctional Institution, bring this prisoner civil rights action under 42 U.S.C. §1983. This matter is before the Magistrate Judge for a Report and Recommendation on initial screening of the complaint pursuant to 28 U.S.C. §1915A(a) and (b)[1] and 42 U.S.C. §1997e(c) to

---

[1]The full text of §1915A reads:

　　　　(a) Screening.--The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

　　　　(b) Grounds for Dismissal.--On review the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--

　　　　　　(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

　　　　　　(2) seeks monetary relief from a defendant who

identify cognizable claims, and to dismiss the complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. The Magistrate Judge finds that the complaint fails to state a claim upon which relief may be granted as to defendants John Desmarais, Mona Parks, Kelly Rose, Stephanie Mayo, Trinity Floyd, Shiela Jordan, Carla Bernard, Michele Betha, Sgt. Berkhart, Sgt White, Sgt Au, Correctional Officer Coey, Correctional Officer Thomas, Correctional Officer Burgress, Correctional Officer J. Phillips, and Correctional Officer Putt and therefore **RECOMMENDS** that they be **DISMISSED**. At the initial screening stage, the Magistrate Judge finds that the complaint states a claim against defendants RICI Warden Bradshaw, RICI Major Mapp, Dr. Fannon and Dr. Granson. Further, the Magistrate Judge **HOLDS** that plaintiffs Thomas Maxwell and Duane Gibson have improperly joined their claims and, therefore, ORDERS that the Clerk of Court create two separate case files. Civil Action No. 2:12-cv-0557 shall continue as plaintiff Thomas Maxwell's claims against defendants, and the Clerk of Court shall create a second case file for the claims of plaintiff Duane Gibson.

---

is immune from such relief.

(c) Definition.--As used in this section, the term "prisoner" means any person incarcerated or detained in any facility who is accused of, convicted of, sentence for, or adjudicated delinquent for, violations of criminal law or terms and conditions of parole, probation, pretrial release, or diversionary program.

2

The allegations in the complaint regarding the claims of plaintiffs Maxwell and Gibson will be summarized separately below. The complaint asserts claims against the following defendants: John Desmarais, Medical Director, Ohio Department of Rehabilitation and Correction (ODRC); Mona Parks, Assistant Chief Inspector, ODRC; M. Bradshaw, Warden, Richland Correctional Institution (RICI); Major Mapp, RICI; Institutional Inspector Kelly Rose, RICI; Dr. Granson, RICI; Nurse Practitioner Stephanie Mayo, RICI; Medical Administrator Trinity Floyd, RICI; Assistant Medical Administrator Shiela Jordan, RICI; Unit Manager Administrator Carla Bernard, RICI; Unit Manager Michele Betha, RICI; Sgt. Berkhart, RICI; Sgt White, RICI; Sgt Au, RICI; Correctional Officer Coey, RICI; Correctional Officer Thomas, RICI; Fannon, podiatrist, RICI; Correctional Officer Burgress, RICI; Correctional Officer J. Phillips, RICI; and Correctional Officer Putt, RICI.

Thomas Maxwell. The complaint alleges the following facts relating to the claims asserted by plaintiff Maxwell. In April 2001, Correctional Officer Derek Green assaulted Maxwell and injured his neck, shoulders, and spine. He uses a walker and is going blind. Complaint, ¶¶ 32-40, Doc. 1-2, PageID 18.

In 2008, plaintiff Maxwell filed suit in the United States District Court for the Northern District of Ohio at Akron, Case No. 1:06-cv-926, and won a settlement. The complaint further alleges that ". . . I have since been denied the medical help to resolve those injuries and made to endure continued harassment by Richland Correctional

3

Institution staff personnel who refused to accommodate my medical needs." *Id.*, ¶¶ 45 and 46.

Defendants Desmarais, Floyd, Jordan, Granson and Mayo knew that Maxwell needed to be transported in a wheelchair to the Columbus Medical Center but they insisted that he be transported there on an unspecified date(s) by a regular prison bus that did not accommodate a wheelchair. Maxwell is unable to walk on the bus steps because he has a walker and drags his foot as a residual of a 2008 stroke. *Id.*, ¶ 47.

In or about July 2011, defendants Bradshaw, Bernard and Mapp implemented new yard rules, Complaint, Exh. B, Doc. 1-4, PageID 32-34, that discriminated against prisoners with a disability because it prohibited them from participating in programs in the conversation pits at the south end of the yard between 8:00 a.m. and 3:30 p.m. The complaint alleges that this rule effectively prevented Maxwell from using the yard during those hours because he is unable to walk up the hill to the only other area available for recreation. He requested an accommodation, *Id.*, Exh. C, PageID 35, but defendants Bradshaw, Floyd, Jordan, Granson and Mayo denied the request. *Id.*, PageID 36; Complaint, ¶¶ 48-50, Doc. 1-2, PageID 20. Sheila Jordan's response to Maxwell's request for accommodation states that Major Mapp said that prisoners are not allowed in the conversation pits until after the 4:00 p.m. count had cleared. Dr. Granson said that Maxwell was able to "continue to go to go to rec where it is presently held." Complaint, Doc. 1-6, Exh. D, PageId 36.

Sometime after March 30, 2012, defendant Berkhart retaliated against Maxwell for filing grievances by forcing him to sign a statement retracting his earlier complaint that his cell mate had assaulted him. Major Mapp was aware that Maxwell had issues with staff but failed to stop them from harassing and retaliating against him. Complaint, ¶¶ 51 and 52, PageID 20.

On unspecified dates after November 2008, defendants Desmarais, Parks, Bradshaw, Mapp, Rose, Granson, Mayo, Floyd, Jordan, Bernard, Betha, Berkhart, White, Au, Coey, Thomas, Burgess, Phillips, and Putt have harassed Maxwel in retaliation for his having won a lawsuit against unidentified defendants. *Id.*, ¶¶ 54-60.

Plaintiff Duane Gibson. Gibson has callouses, hammer toes, and neuropathy in his feet. In 2000, he had two major surgeries on his feet. In November and December 2009, Dr. Khandekar, a podiatrist, wrote a prescription for orthopedic corrective walking boots to relieve pain when he is walking. Gibson was also given a medical diet. *Id.*, ¶¶ 41-44 and 61, PageID 19 and 22.

On an unspecified date, Dr. Fannon, also a podiatrist, told Gibson there was nothing wrong with his feet. Gibson responded that his feet are in constant pain and that when he walks he builds up callouses on his feet. He asked Dr. Fannon to trim his callouses, but he told Gibson that his feet were just fine and that he needed to go play basketball. *Id.*, ¶¶ 63-64. Fannon knew about Gibson's two major surgeries on both his feet. For the first 10 years Gibson was in prison, he saw a podiatrist every 60-90 days, but the last time he saw Dr. Fannon was October 1, 2010. Then Fannon refused to write

a follow up order for 60 days. Gibson has not had his calluses trimmed on the bottom of his feet since October 1, 2010. Every time he takes a step, Gibson's deformed big toes rub against his second toes, "causing severe pain and calluses that hurt really really bad." Gibson's hammer toe and arthritis constantly hurt, and he cannot move, wiggle or bend any of his toes. *Id.*, ¶¶ 72-73.

In October 2010, Dr. Granson wrote a no standing order, but limited it to 90 days. Since he has refused to rewrite the order, saying there is nothing wrong with Gibson's feet. *Id.*, ¶ 74. He said that policy had changed and doctors could no longer order permanent restrictions for disabled inmates. *Id.*, ¶ 77. Granson told Gibson that his no standing order had expired and his bottom bunk and bottom range restrictions had also expired. Gibson had never had any problems with Granson until he complained about defendant Floyd's deliberate indifference to his medical treatment. *Id.*, ¶ 78. On an unspecified date, defendant RICI Health Administrator Trinity Floyd told the commissary staff that Gibson no longer had a no standing in line order. *Id.*, ¶ 76

The new prison yard rules, promulgated by defendants S. Bradshaw, Mapp, and Bernard, prevent Gibson from getting exercise until after 6:00 p.m. (when the more easily accessed south pits are open to inmates), because he cannot make it up the hill to the pit/recreation area north of center light post number 7. *Id., Id.*, ¶ 79.

On unspecified dates, defendants Desmarais, Rose, Croft and Granson violated ODRC's dietary formulary for 9 months by substituting a cheese sandwich in his diet

bag for graham crackers, fresh fruit and peanut butter. As a result, Gibson, who receives the diet bag to help him maintain his weight, has lost 10 pounds. *Id.*, ¶ 75, PageID 23.

On September 2, 2010, defendant Sheila Jordan, Assistant Health Administrator, RICI, provided Gibson with non-orthopedic boots and told him he would have to buy insoles at the inmate commissary. Gibson told Jordan that the Columbus Medical Center had molds of his feet and that he needed an orthopedic boot to correct his walk and relieve his foot pain. Jordan told Gibson that ODRC no longer made boots and that the prison was not allowed to buy boots to fill his doctor's order. *Id.*, ¶¶ 65-69.

On unspecified dates, Gibson "issue[d] numerous informal complaint resolution notification of grievance[s] upon the DEFENDANT MR. ROSE as well as appeal. DEFENDANT FLOYD fail[ed] to act, instead [he] RETALIATED against the plaintiff Gibson for filing complaints, grievances and appeals, correspondences against the defendants for their deliberate indifferent acts." *Id.*, ¶ 70.

Rule 8(a), Federal Rules of Civil Procedure provides for notice pleading. *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The United States Supreme Court held in *Erickson v. Pardus*, 551 U.S. 89, 93 127 S.Ct. 2197 (2007):

> . . . Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts showing that the pleader is entitled to relief are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.': *Bell Atlantic Corp. v. Twombly*, 550 U.S. __, __, 127 S.Ct. 1955, __ (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Moreover, *pro se* complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. at 94; *Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980).

**Discussion.**

Eighth Amendment claims. The Eighth Amendment forbids prison officials from "unnecessarily and wantonly inflicting pain" on an inmate by acting with "deliberate indifference" toward the inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To demonstrate an Eighth Amendment deprivation, a prisoner must show that a prison official acted with deliberate indifference to his serious medical needs. There is both an objective and a subjective component to a cruel and unusual punishment claim. *Scott v. Ambani,* 577 F.3d 642, 648 (6th Cir. 2009). The objective component requires a plaintiff to demonstrate that the medical need was "serious." *Id.* A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). To meet the subjective component, a complaint must plead "facts which show that the prison official had a 'sufficiently culpable state of mind.' [*Brennan v.*] *Farmer*, 511 U.S. [825], 834 [(1994)]; *Comstock* [*v. McCrary,* 273 F.3d 693], 834 [(6th Cir. 2001)." Prison officials are liable only if they know of and disregard "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Mere negligence does not constitute

8

deliberate indifference. *See, Estelle*, 429 U.S. at 106. Further, a prisoner does not state a claim merely by pleading that he disagrees with the diagnosis or treatment. *Estelle*, 429 U.S. at 107-08; *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).

Nonetheless, prison officials may not entirely insulate themselves from liability under § 1983 simply by providing some measure of treatment. Deliberate indifference may be established in cases where it can be shown that a defendant rendered "grossly inadequate care" or made a "decision to take an easier but less efficacious course of treatment." *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir.2002)(quoting *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)); *see also Chance v. Armstrong*, 143 F.3d 698, 704 (2d Cir. 1998). A complaint states a claim when it alleges that "prison authorities have denied reasonable requests for medical treatment in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury." *Westlake,* 537 F.2d at 860; *Scott v. Ambani,* 577 F.3d at 648.

<u>Maxwell's Eighth Amendment claims</u>. The complaint alleges that defendants Desmarais, Floyd, Jordan, Granson and Mayo knew that Maxwell needed to be transported in a wheelchair to the Columbus Medical Center but insisted he take a regular prison bus that did not accommodate a wheelchair. The complaint fails to give defendants adequate notice of the claim. First, it does not allege the date or approximate date defendants engaged in actionable conduct. Second, it does not indicate what harm,

9

if any, plaintiff suffered as a result of that actionable conduct. Consequently, the complaint fails to state a claim against these defendants regarding this incident.

The complaint alleges that on unspecified dates defendants Granson, Mayo, Floyd and Jordan refused to give Maxwell pain medication or medical devices to address his pain. Complaint, ¶ 58. However, the complaint fails to give the defendants fair notice of when they engaged in actionable conduct and exactly what they did to subject plaintiff to cruel and unusual punishment. Consequently, it fails to state a claim against them as to these allegations.

<u>Plaintiff Gibson's Eighth Amendment claims</u>. At the initial screening stage, the complaint's allegations that Dr. Fannon failed to provide Gibson with medical treatment for severe foot pain states an Eighth Amendment claim against him. Complaint, ¶¶ 63-63 and 72-73. Similarly, at this stage of the proceedings, the complaint states a claim against Dr. Granson that he intentionally subjected Maxwell to cruel and unusual punishment by ignoring his foot impairments and refusing to renew his no standing in line order, bottom bunk restriction, and bottom range restriction. Complaint, ¶¶ 74, 75, 77 and 78. The complaint does not state a claim against defendant Health Care Administrator Trinity Floyd for telling the commissary staff that Maxwell no longer had a no standing in line order, *id.*, Complaint, ¶ 76, because the doctor, not the Health Care Administrator was responsible for deciding whether to give him the order.

The allegations in the complaint that defendants Desmarais, Rose, Croft and Granson violated ODRC's dietary formulary for 9 months by substituting a cheese

sandwich in his diet bag for graham crackers, fresh fruit and peanut butter, Complaint, ¶ 75, PageID 23, fails to give them fair notice of the claims against them. Consequently, the complaint fails to state a claim for relief against them as to these allegations.

The allegations that defendant Assistant Health Administrator Sheila Jordan provided Gibson with non-orthopedic boots does not state a claim that she subjected him to cruel and unusual punishment, Complaint, ¶ 65-60, because the decision about whether he needs orthopedic corrective boots is made by the prison doctors, not its health administrators. The complaint does not allege any facts that, if proved, would demonstrate that Jordan is responsible for denying Gibson orthopedic corrective boots. No current treator at RICI has prescribed corrective orthopedic boots. The disposition of Gibson's February 5, 2010 grievance regarding the corrective orthopedic boots states that he had a December 2009 order for orthopedic foot molds and orthopedic walking boots. The grievance was dismissed both as untimely and as duplicating a previous grievance. Complaint, Exhs. 5 and 6, PageId 46-47. The Chief Inspector's decision stated that x-rays and other medical evidence indicated that the only documented problems with Gibson's feet was October 2000 bunion surgery on both feet. He was last seen at an orthotic clinic in 2002. The Chief Inspector concluded that there was no medical necessity for corrective orthopedic boots. *Id.* Gibson was issued orthotic inserts in February 2007. *Id.*, Exh. 7, PageID 48. With no current, valid doctor's order, Ms. Jordan was under no constitutional obligation to purchase corrective orthopedic boots for Gibson. I further note that the cause of action would appear to be barred by the two

year statute of limitations for claims under 42 U.S.C. § 1983. *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007); *Banks v. City of Whitehall*, 344 F.3d 550, 553-54 (6th Cir. 2003).

<u>Disability claims</u>. Plaintiffs Maxwell and Gibson both maintain that a July 2011 decision to close the south pits in the prison yard between 8:00 a.m. and 3:30 p.m. discriminated against them because of their disabilities. At the initial screening stage, the complaint states a violation of the Americans with Disabilities Act as to defendants Warden Bradshaw and Major Mapp. The complaint does not explain Unit Manager Bernard's involvement in the decision. The response to the ADA grievance attached to the complaint does indicate that Major Mapp is the person who enforced the new rule and the Warden made the final decision to deny the ADA grievance. But nowhere is there an indication that the Unit Manager was involved in making or enforcing the new rule; consequently, the complaint does not state a claim for relief against defendant Bernard.

The complaint alleges that on an unspecified date defendants Rose and Berkhart denied Maxwell the ability to exercise in a safe area with a medicine ball. Complaint, ¶ 59, PageID 21. The complaint fails to give these defendants fair notice of the claims against them because it does not plead when they engaged in the actionable conduct.

<u>Retaliation</u>. There are three elements a plaintiff must prove to establish a claim of retaliation:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in

12

> that conduct; and (3) there is a causal connection between
> events (1) and (2)--that is, the adverse action was motivated
> at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)(*en banc*); *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007). The plaintiff has an initial "burden of establishing that his protected conduct was a motivating factor behind any harm . . . ." 175 F.3d at 399. If plaintiff establishes that his protected conduct was a motivating factor, then the burden of production shifts to the defendant. *Id*. Defendant is entitled to summary judgment if he "can show that he would have taken the same action in the absence of the protected activity . . . ." *Id*.

Maxwell's retaliation claims. The complaint alleges that sometime after March 30, 2012 defendant Sgt. Berkhart retaliated against Maxwell by forcing him to retract his earlier complaint that his cell mate had assaulted him. At the initial screening stage, the complaint states a claim against defendant Sgt. Berkhart.

The complaint further alleges that on unspecified dates after November 2008, defendants Desmarais, Parks, Bradshaw, Mapp, Rose, Granson, Mayo, Floyd, Jordan, Bernard, Betha, Berkhart, White, Au, Coey, Thomas, Burgess, Phillips, and Putt have harassed Maxwel in retaliation for his having won a lawsuit against unidentified defendants. Complaint, ¶ 54, PageID 20. These allegations fail to give defendants fair notice of the claims against them because it does not allege when the retaliatory acts occurred. Similarly the allegation that defendants Putt, Phillips, Betha and Burkhart twice put Maxwell in segregation in retaliation for his having filed a lawsuit, *id.*, ¶ 56,

13

PageID 21, fails to allege the dates they engaged in actionable conduct. Consequently, it fails to give them fair notice of the claim and, thus, fails to state a claim against them. The allegation that defendants White and Au harassed Maxwell by failing to follow a court order that he be permitted to go to meals 15 minutes early, *id.,* ¶ 57, fails to allege the dates they engaged in actionable conduct. Consequently, it fails to give them fair notice of the claim and, thus, fails to state a claim against them. Finally, the allegation that defendants Berkhart, Betha and Thomas threatened Maxwell into signing a document stating that he was not afraid of them and threatened him against filing a grievance, *id.,* Complaint, ¶ 60, fails to plead the date of the actionable conduct. Consequently, the complaint fails to give them fair notice of the claim and must be dismissed.

Plaintiff Gibson's retaliation claims. The allegation that defendants Rose and Floyd retaliated against Gibson for his filing complaints, grievances, appeals, and correspondence about defendants' deliberately indifferent acts fails to give these defendants fair notice of the claim because the dates they allegedly engaged in actionable conduct and the nature of that actionable conduct is not pleaded. Complaint, ¶ 70. Consequently, the complaint fails to state a claim against them as to the allegations in paragraph 70.

Plaintiffs' claims against Mona Parks, Assistant Chief Inspector.

Prison officials whose only roles "involve their denial of administrative grievances and their failure to remedy the alleged retaliatory behavior" cannot be liable

14

under §1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984); *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982). The only alleged involvement of Parks was to deny Maxwell's appeal of grievances; consequently, the complaint fails to allege a cause of action against Parks.

Accordingly, it is hereby **RECOMMENDED**, as set out more fully above, that Plaintiff Maxwell's disability claim against defendants Bradshaw and Mapp (Complaint, ¶¶48-49) states a claim at the initial screening stage, but that his Eighth Amendment claims, his disability claims against defendants Rose, Berkhart and Bernard (Complaint, ¶¶ 48-49 and 59), and his retaliation claims be **DISMISSED** for failure to state a claim. It is **FURTHER RECOMMENDED** that plaintiff Gibson's Eighth Amendment claims against Drs. Fannon and Granson (Complaint, ¶¶ 61-64 and 71-74) disability claim against defendants Bradshaw and Mapp (Complaint, ¶ 79) state a claim at the initial screening stage, but that  and his  Eighth Amendment claims against defendants Desmarais, Rose and Croft regarding his diet supplement (Complaint, ¶ 75), his orthopedic corrective boot claim against defendant Jordan (Complaint, ¶ 65-69), and his retaliation claims be **DISMISSED** for failure to state a claim under 42 U.S.C. §1983. At the initial screening stage, the complaint is sufficient to state a claim against defendants RICI Warden Bradshaw, RICI Major Mapp, Dr. Fannon and Dr. Granson, but not defendants John Desmarais, , Mona Parks, Kelly Rose, Stephanie Mayo, Trinity Floyd, Shiela Jordan, Carla Bernard, Michele Betha, Sgt. Berkhart, Sgt White, Sgt Au, Correctional Officer Coey, Correctional Officer Thomas, Correctional Officer Burgress,

15

Correctional Officer J. Phillips, and Correctional Officer Putt. Accordingly, it is

**RECOMMENDED** that all defendants except RICI Warden Bradshaw, RICI Major

Mapp, Dr. Fannon and Dr. Granson be **DISMISSED** from this lawsuit.

**Joinder of Plaintiffs.** Rule 20(a), Federal Rules of Civil Procedure provides:

(a) Persons Who May Join or Be Joined.

    (1) Plaintiffs. Persons may join in one action as plaintiffs if:

        (A) they assert any right to relief jointly,
        severally, or in the alternative with respect to
        or arising out of the same transaction,
        occurrence, or series of transactions or
        occurrences; and

        (B) any question of law or fact common to all
        plaintiffs will arise in the action.

Here plaintiffs do not assert claims arising out of the same transaction, occurrence, or series of occurrences and the complaint does not plead common questions of law or fact, except to the extent that both challenge the new prison yard rule. The Eighth Amendment claims plaintiffs Maxwell and Gibson plead against defendants arise out of their respective individual medical conditions and the course of treatment for those conditions. The claims are entirely separate and independent. The retaliation claims plaintiffs plead arise out of separate incidents and do not share any common facts. Consequently it is **ORDERED** that the Clerk of Court open a separate case for plaintiff Gibson's claims.

Maxwell filed a motion for leave to proceed in forma pauperis, but Gibson did not. Gibson is **ORDERED** to file a motion for leave to proceed in forma pauperis within thirty (30) days of the date of this Report and Recommendation.

**IT IS FURTHER ORDERED** that the United States Marshal serve upon each defendant named in part III, B and C of the form civil rights complaint a summons, a copy of the complaint, and a copy of this Order. Defendants are not required to answer the complaint unless later ordered to do so by the Court.

The Clerk of Court is DIRECTED to mail a copy of this Order to the Attorney General of Ohio, Corrections Litigation Section, 150 East Gay St., 16th Floor, Columbus, OH 43215.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. See 28 U.S.C. §636(b)(1)(B); Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to de novo review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-152 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). See also *Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

s/Mark R. Abel
					United States Magistrate Judge